642 July 22, 2026 No. 692

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

HSI SECURITY SYSTEMS, INC.,
*Plaintiff-Respondent,*

*v.*

LAWRENCE LAW, INC.,
*Defendant,*

*and*

Dean HILL,
*Defendant-Appellant.*

Clackamas County Circuit Court
23CV35082; A184675

Michael C. Wetzel, Judge.

Argued and submitted December 17, 2025.

James F. Marron argued the cause for appellant. Also on the briefs was Marron Law, LLC.

Maria Liesl Ruckwardt argued the cause for respondent. Also on the brief was O'Donnell Law Firm LLC.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

AOYAGI, P. J.

Reversed and remanded.

**AOYAGI, P. J.**

In this defamation action, plaintiff HSI Security Systems, Inc., a company that installs and maintains security systems, seeks to hold defendants Dean Hill and Lawrence Law, Inc. (LL) liable for a negative Yelp review that Hill posted in 2022. Defendant Hill filed a special motion to strike under ORS 31.150, commonly known as the anti-SLAPP (Strategic Lawsuits Against Public Participation) statute. The trial court denied the motion. Defendant appeals, challenging that ruling.[1] As explained below, we agree with the trial court that a portion of the review implies an assertion of objective fact that could be actionable in defamation, but we conclude that plaintiff failed to make out a *prima facie* case as to that statement. The anti-SLAPP motion therefore should have been granted. Accordingly, we reverse and remand.

FACTS

The basic facts are undisputed. Plaintiff installed a security system at a house owned by Tara Lawrence that Lawrence used both as her primary residence and as the principal place of business for her law firm, LL. Defendant is Lawrence's fiancé, periodically resided at the house, and sometimes helped Lawrence with technological issues as he is an information technology professional.

On October 8, 2021, plaintiff performed work on the security system, for which it billed Lawrence $1,015.96. The bill described the services provided that day as installation of an ethernet card, programming of the panel to integrate with the existing network (with a note that they "worked with IT rep"), partial testing to verify function, and providing user instruction. The cost breakdown on the bill was $255.00 for a "Conettix IP Ethernet Interface," $690.00 for six hours of service and travel, and $70.96 for internet monitoring for the period from October 8 to November 30.

There was a dispute over the bill, and, in March 2022, defendant called plaintiff on Lawrence's behalf to

---

[1] Unless otherwise specified, we use "defendant" herein to refer to Hill alone, because defendant LL did not join in the anti-SLAPP motion and is not a party on appeal.

discuss the outstanding bill and try to cancel Lawrence's monthly monitoring service. Lawrence ultimately paid the bill in May 2022 and cancelled the monitoring service.

On May 11, 2022, defendant posted a negative review regarding plaintiff on Yelp:

> "Most unprofessional company I have ever dealt with. Paid nearly $1,000 dollars to 'Upgrade' my system. In actuality, that was a $20 network card and by doing this, the monthly rate nearly doubled? Old antiquated useless system. Motion only. Left for less expensive detection including cameras and state of the art iphone app for a fraction of the cost. My wife calls these people crooks. Theres a reason you can't find them on social media, yelp, BBB. Do not do business with this company."

Plaintiff's president learned of the negative review in February 2023 and wrote a letter to defendant, who took down the review by May 2023.

In August 2023, plaintiff commenced this action, asserting a single claim for defamation. Defendant filed an anti-SLAPP motion. He argued that his Yelp review consisted entirely of nonactionable opinion statements or, alternatively, that any factual statements in it were true and therefore not defamatory. He further argued that plaintiff could not prevail because the claim was filed outside the statute of limitations. Plaintiff opposed the motion, and the trial court denied it. The court agreed with defendant that most of the statements in the review were nonactionable opinions but concluded that one part of the review implied facts and was thus actionable: "Paid nearly $1,000 dollars to 'Upgrade' my system. In actuality, that was a $20 network card and by doing this, the monthly rate nearly doubled?" The court necessarily concluded that plaintiff had made out a *prima facie* case of defamation as to that statement but did not state its reasoning. As for the statute of limitations, the court initially deferred ruling on that issue but ultimately denied that portion of the anti-SLAPP motion as well.

Defendant appeals. He contends that the trial court erred in denying his anti-SLAPP motion, because his review consists entirely of nonactionable opinion statements, because there is no evidence that the statement deemed

factual by the trial court was false, and because plaintiff's claim was filed outside the statute of limitations. Plaintiff defends the trial court's ruling on the anti-SLAPP motion.

## ANTI-SLAPP STANDARD

Anti-SLAPP motions are governed by ORS 31.150, which specifies that they "shall be treated as a motion to dismiss under ORCP 21 A but shall not be subject to ORCP 21 F." ORS 31.150(1). As relevant here, a defendant may file an anti-SLAPP motion in a civil action arising out of a "written statement *** presented[] in a place open to the public or a public forum in connection with an issue of public interest." ORS 31.150(2)(a)(C). The defendant "has the initial burden of making a prima facie showing that the claim against which the motion is made arises out of" a qualifying statement. ORS 31.150(4). If the defendant does so, "the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." *Id*.

"To establish a *prima facie* case on a particular claim, a plaintiff must produce evidence sufficient to permit a reasonable factfinder to find in the plaintiff's favor on the claim." *Cider Riot, LLC v. Patriot Prayer USA, LLC*, 330 Or App 354, 359, 544 P3d 363 (2024). In other words, a plaintiff must present "enough evidence to avoid a directed verdict—namely, enough evidence to meet the plaintiff's burden of production." *Handy v. Lane County*, 360 Or 605, 618, 385 P3d 1016 (2016). The court is to "consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." ORS 31.150(6). A plaintiff ultimately must make out a *prima facie* case with "evidence," however, and can "not rely solely on pleadings or written argument." *Snook v. Swan*, 292 Or App 242, 247, 423 P3d 747 (2018). The evidence is to be viewed in the light most favorable to the plaintiff in assessing whether a *prima facie* case has been made. *Handy*, 360 Or at 608 n 1.

If the plaintiff succeeds in making out a *prima facie* case, the court shall deny the anti-SLAPP motion, ORS 31.150(4), and shall enter a limited judgment to that effect,

ORS 31.150(1). The denial of an anti-SLAPP motion has no bearing on the determination of the merits at trial. ORS 31.150(7). If the plaintiff fails to make out a *prima facie* case, the court shall grant the anti-SLAPP motion and enter a judgment of dismissal without prejudice. ORS 31.150(1).

We review the grant or denial of an anti-SLAPP motion for legal error. *Waggoner v. Husk*, 337 Or App 519, 522, 564 P3d 167 (2025).

## ANALYSIS

Defendant contends that the trial court erred in denying his anti-SLAPP motion.[2] The parties agree that defendant made a *prima facie* showing that plaintiff's defamation claim arises out of a qualifying statement, such that the burden shifted to plaintiff to make out a *prima facie* case. They disagree as to whether plaintiff made out a *prima facie* case.

We begin with whether the Yelp review consists entirely of constitutionally protected statements of opinion. In *Neumann v. Liles*, 358 Or 706, 369 P3d 1117 (2016), the Oregon Supreme Court set out a two-step framework for courts to use in the anti-SLAPP context to decide whether allegedly defamatory speech is protected by the First Amendment to the United States Constitution and thus not actionable. At the first step, the court must determine whether the statement "involves a matter of public concern." *Id*. at 718. If so, the court proceeds to the second step, which is to determine "whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact." *Id*. at 719. The court must consider in making that determination "(1) whether the general tenor of the entire publication negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates that

---

[2] An assignment of error must be directed at a ruling. ORAP 5.45(3). Here, defendant takes issue with only one ruling—the denial of his anti-SLAPP motion—but purports to raise three assignments of error, with the first challenging the ruling itself and the second and third challenging aspects of the court's reasoning. "Assignments of error are made to a ruling, not the reasoning for the ruling." *Towey v. City of Hood River*, 321 Or App 414, 420 n 7, 516 P3d 738 (2022). We therefore treat all of defendant's arguments as going to his first assignment of error.

impression; and (3) whether the statement in question is susceptible of being proved true or false." *Id*. "[T]he work as a whole, the specific context in which the statements were made, and the statements themselves" should all be considered in making the determination. *Id*. (internal quotation marks omitted).

If a statement cannot reasonably be understood to imply an assertion of objective fact, then it is "an expression of opinion on matters of public concern that is protected under the First Amendment" and, as such, not actionable. *Id*. at 722 (affirming the trial court's dismissal of a defamation claim on the defendant's anti-SLAPP motion because all of the statements at issue were protected by the First Amendment). Conversely, if a statement can reasonably be understood to imply an assertion of objective fact, it is not "opinion" and may be actionable. *Waggoner*, 337 Or App at 530. Whether a defamatory statement is protected by the First Amendment is a question of law. *Chief Aircraft, Inc. v. Grill*, 288 Or App 729, 733, 407 P3d 909 (2017).

In this case, it is undisputed that defendant's Yelp review concerns a matter of public concern. *See Lowell v. Wright*, 369 Or 806, 828-29, 512 P3d 403 (2022) (online review of a piano store involved a matter of public concern); *Neumann*, 358 Or at 720 (online review of a wedding venue involved a matter of public concern). What is disputed is whether the review consists entirely of subjective opinions, as defendant contends, or whether it can reasonably be understood to imply some assertions of objective fact, as the trial court concluded and plaintiff maintains. Defendant contends that the trial court "fail[ed] to analyze the subject review under the *Neumann* framework for analyzing whether or not an alleged statement is a protected opinion." In substance, however, we understand him to argue that the trial court *misapplied Neumann*, versus not applying it at all. *Neumann* is a leading case, it was briefed and argued to the trial court, and it is apparent that the trial court applied it despite not expressly citing it by name.

We are unpersuaded that the trial court misapplied *Neumann*. The trial court concluded that all of the statements in defendant's Yelp review were nonactionable

expressions of opinion except one: "Paid nearly $1,000 dollars to 'Upgrade' my system. In actuality, that was a $20 network card and by doing this, the monthly rate nearly doubled?" *See Lowell*, 369 Or at 833-34 (recognizing that an online review may contain both actionable statements implying facts and nonactionable statements of opinion). We agree with the trial court that that statement can reasonably be understood to imply "an assertion of objective fact." *Neumann*, 358 Or at 719. Specifically, it can reasonably be understood to imply that defendant was a customer of plaintiff's and that plaintiff charged nearly $1,000 to install a $20 network card in his security system.[3]

Nothing about the general tenor of the Yelp website or defendant's review negates the impression that defendant was asserting objective facts regarding how much plaintiff charged to install the ethernet card and how much the card itself was worth. If anything, defendant's reference to "my system" bolsters the impression that he was asserting objective facts about a matter on which he had direct personal knowledge. As for figurative or hyperbolic language, defendant's description of plaintiff as the "[m]ost unprofessional company I have ever dealt with" could be perceived as hyperbolic, but also could be taken literally, and the only figurative language is the term "crooks." The review does not use figurative or hyperbolic language to such a degree or in such a manner as to negate the impression that the one statement at issue asserts objective fact. *See Lowell*, 369 Or at 833 (although an online review of a piano store included some "evocative language, such as the store 'smelled like grandma's attic,'" it was "not so figurative or hyperbolic as to undermine" the impression that other statements relayed objective facts). Finally, the statement at issue is susceptible to being proved true or false. Plaintiff either did or did not install a $20 network card and either did or did not charge nearly $1,000 to do so.

The trial court therefore did not err in concluding that, although many of the statements in defendant's review

---

[3] Although defendant's statement that "the monthly rate nearly doubled" is included in the part of the review that the trial court concluded could be actionable as a statement implying objective fact, the parties have never made any arguments about that statement, in the trial court or on appeal, so we do not address it.

were constitutionally protected expressions of opinion, a reasonable factfinder could understand one statement—"Paid nearly $1,000 dollars to 'Upgrade' my system. In actuality, that was a $20 network card and by doing this, the monthly rate nearly doubled?"—to imply assertions of objective fact, such that that statement was actionable without encroaching on the First Amendment.

We next consider defendant's argument that plaintiff failed to make out a *prima facie* case because it failed to prove that that statement was false.

"The elements of a claim for defamation are: (1) the making of a defamatory statement; (2) publication of the defamatory material; and (3) a resulting special harm, unless the statement is defamatory *per se* and therefore gives rise to presumptive special harm." *National Union Fire Ins. Co. v. Starplex Corp.*, 220 Or App 560, 584, 188 P3d 332, *rev den*, 345 Or 317 (petitions of Scottsdale Ins. Co. and Starplex Corp.), *and rev den*, 345 Or 417 (2008) (petition of Nautilus Ins. Co.). As to the first element, in the professional context, a statement is "defamatory" when "it is false and ascribes to another conduct, characteristics[,] or a condition incompatible with the proper conduct of his lawful business, trade, or profession." *Brown v. Gatti*, 341 Or 452, 458, 145 P3d 130 (2006) (brackets and internal quotation marks omitted). The plaintiff bears the burden to prove that a statement on a matter of public concern is false. *Lowell*, 369 Or at 818 ("[A] private-figure plaintiff bears the burden of proving falsity of statements in defamation cases involving the First Amendment public comment defense, even when the action is brought against nonmedia defendants."); *Hickey v. Settlemier*, 141 Or App 103, 111, 917 P2d 44, *rev den*, 323 Or 690 (1996) ("The axiom that 'truth is an absolute defense' in defamation cases is somewhat imprecise in cases involving public figures or issues of public concern. Rather, in such cases, falsity is an element of plaintiff's defamation case, because plaintiff has the burden of proving it." (Citation omitted.)).

Thus, as part of establishing a *prima facie* case of defamation, plaintiff had to produce evidence sufficient to permit a reasonable factfinder to find that the statement at

issue was false. *See Cider Riot, LLC*, 330 Or App at 359 ("To establish a *prima facie* case on a particular claim, a plaintiff must produce evidence sufficient to permit a reasonable factfinder to find in the plaintiff's favor on the claim."). It failed to do so.

In support of his anti-SLAPP motion, defendant filed a declaration in which he attested, among other things, that he posted the Yelp review attached to the complaint and that, before doing so, he "was able to locate the same Ethernet card on-line for a cost of around $20.00." In response, plaintiff filed a declaration by its president that simply attached the invoice that plaintiff sent to Lawrence for services rendered on October 8, 2021, and the monitoring agreement signed by Lawrence on September 20, 2021.[4]

Viewing the evidence in the light most favorable to plaintiff, we conclude that the evidence was insufficient to make out a *prima facie* case of defamation, because it was insufficient to prove that the statement was false. Again, the only statement at issue (because the remainder of the review is constitutionally protected) is "Paid nearly $1,000 dollars to 'Upgrade' my system. In actuality, that was a $20 network card and by doing this, the monthly rate nearly doubled?" Plaintiff's invoice shows that plaintiff charged $945 to install the ethernet card, specifically $255 for the card itself and $690 for labor. Plaintiff offered no other relevant evidence, including nothing to counter defendant's evidence that the same ethernet card could be purchased online for $20. *See Cider Riot, LLC*, 330 Or App at 375 (explaining that, in deciding whether a plaintiff made out a *prima facie* case for anti-SLAPP purposes, we consider the plaintiff's evidence and all reasonable inferences therefrom, adopt the plaintiff's version of the facts where there is conflicting evidence, and consider the defendant's opposing evidence only to determine if it defeats the plaintiff's showing as a matter of law).

---

[4] Defendant moved to strike plaintiff's declaration, the trial court implicitly denied that motion, and defendant has not assigned error to that ruling on appeal. We therefore do not consider or address defendant's contention that plaintiff's declaration "should have been disregarded by the trial court." *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error *** is assigned as error in the opening brief in accordance with this rule[.]").

Plaintiff argues that its invoice is enough evidence to prove that the Yelp review contained false statements, but it does not explain how, and we do not see how. The invoice establishes only what plaintiff charged for the ethernet card and associated labor—nearly $1,000, as stated in defendant's review. Plaintiff no doubt disagrees with defendant's poor opinion of the security system that it provided, and plaintiff might well have a perfectly reasonable explanation for the amount that it charged for the services rendered on October 8. But defendant is entitled to his subjective opinion on whether the system was worth what it cost—he is allowed to be unhappy. What he is not allowed to do, or at least may face liability if he does, is make false statements of objective fact. Here, however, as to the one actionable statement in defendant's Yelp review, plaintiff failed to put forward evidence sufficient to prove that it was false. *Cf. Hickey*, 141 Or App at 111 (holding that the defendant was entitled to a directed verdict on the plaintiff's defamation claim, because, as to those statements asserting objective facts, the "plaintiff did not present any evidence from which the jury could have found defendant's statements to be false"); *Unelko Corp. v. Rooney*, 912 F2d 1049, 1055-57 (9th Cir 1990) (affirming grant of summary judgment for the defendant on defamation claim because the plaintiff failed to create a triable issue on falsity).

To the extent plaintiff relies on defendant having misrepresented in his Yelp review that he was the customer (rather than Lawrence), that argument is misplaced. Defendant's portrayal of himself as the customer may have bolstered the impression that he was asserting objective facts based on personal knowledge, as previously discussed, ___ Or App at ___ (slip op at 8), but there is nothing defamatory about describing the system at Lawrence's house as "my system," regardless of the accuracy of that statement.

Because plaintiff failed to make out a *prima facie* case of defamation with respect to the only portion of defendant's review that could reasonably be understood to imply assertions of objective fact, in that it failed to put forth sufficient evidence to prove falsity, the trial court erred in

denying defendant's anti-SLAPP motion. We need not reach the statute-of-limitations issue in light of our disposition.[5]

Reversed and remanded.

---

[5] It is presently an open question whether, under ORS 31.150(4), "a plaintiff is required to produce evidence capable of defeating affirmative defenses in order [to] meet its *prima facie* burden at the second step of the anti-SLAPP analysis." *Plotkin v. SAIF*, 280 Or App 812, 829, 385 P3d 1167 (2016), *rev den*, 360 Or 851 (2017); *see also Neumann v. Liles*, 261 Or App 567, 580 n 8, 323 P3d 521 (2014), *rev'd on other grounds*, 358 Or 706, 369 P3d 1117 (2016) ("We save for another day the question of whether and to what extent ORS 31.150 authorizes parties to litigate affirmative defenses in the context of a special motion to strike."). We again save that question for another day.